IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| RANDALL ALLEN WINNINGHAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:14-CV-01044-DGK-SSA |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AFFIRMING THE COMMISSIONER'S DECISION

This action seeks judicial review of the Acting Commissioner of Social Security's ("the Commissioner") decision denying Plaintiff Randall Winningham's applications for Social Security disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401–434, and Supplemental Security Income under Title XVI of the Act, 42 U.S.C. §§ 1381–1383f. The Administrative Law Judge ("ALJ") found Plaintiff had several severe mental impairments—a mood disorder, major depressive disorder, and generalized anxiety disorder—but no severe physical impairments. The ALJ further found that Plaintiff lacked the residual functional capacity ("RFC") to perform any past relevant work, but retained the RFC to work as a sandwich maker, a day worker, a linen room attendant, and several other jobs.

After carefully reviewing the record and the parties' arguments, the Court finds the ALJ's opinion is supported by substantial evidence on the record as a whole. The Commissioner's decision is AFFIRMED.

### Procedural and Factual Background

The complete facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

Plaintiff filed his applications on September 28, 2010, alleging a disability onset date of September 11, 2010. The Commissioner denied the applications at the initial claim level, and Plaintiff appealed the denial to an ALJ. The ALJ held a hearing, and on December 14, 2012, issued a decision finding Plaintiff was not disabled. The Appeals Council denied Plaintiff's request for review on September 24, 2014, leaving the ALJ's decision as the Commissioner's final decision. Plaintiff has exhausted all administrative remedies and judicial review is now appropriate under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

## Standard of Review

The Commissioner follows a five-step sequential evaluation process[1] to determine whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A).

A federal court's review of the Commissioner's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Buckner v. Astrue,* 646 F.3d 549, 556 (8th Cir. 2011). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *McKinney v. Apfel,* 228 F.3d 860, 863 (8th Cir. 2000). The court must "defer

---

[1] "The five-step sequence involves determining whether (1) a claimant's work activity, if any, amounts to substantial gainful activity; (2) his impairments, alone or combined, are medically severe; (3) his severe impairments meet or medically equal a listed impairment; (4) his residual functional capacity precludes his past relevant work; and (5) his residual functional capacity permits an adjustment to any other work. The evaluation process ends if a determination of disabled or not disabled can be made at any step." *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 632 n.1 (8th Cir. 2014); *see* 20 C.F.R. §§ 404.1520(a)–(g); 416.920(a)–(g). Through Step Four of the analysis the claimant bears the burden of showing that he is disabled. After the analysis reaches Step Five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009).

heavily" to the Commissioner's findings and conclusions. *Hurd v. Astrue,* 621 F.3d 734, 738 (8th Cir. 2010). The court may reverse the Commissioner's decision only if it falls outside of the available zone of choice, and a decision is not outside this zone simply because the court might have decided the case differently were it the initial finder of fact. *Buckner,* 646 F.3d at 556.

## Discussion

Plaintiff scatters various arguments throughout his brief. In sum, Plaintiff contends the ALJ erred in evaluating: (1) his impairments; (2) his credibility; and (3) his RFC. These arguments are without merit.

**A.     The ALJ properly evaluated Plaintiff's physical impairments.**

Plaintiff argues the ALJ erred in not finding any of his physical impairments to be severe impairments. Pl.'s Br. (Doc. 16) at 21-22. Plaintiff contends the ALJ should have found his diabetes, gastroesophageal reflux disease ("GERD"), sleep apnea, ganglion cyst in his hand, back pain, and incontinence were each severe impairments. Pl.'s Br. at 21-22.

A medically determinable impairment or combination of impairments is "non-severe" if it has no more than a minimal impact on an individual's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921; SSR 96-3p; *Hudson v. Bowen*, 870 F.2d 1392, 1395 (8th Cir. 1989). It is the plaintiff's burden to establish, through objective medical evidence, his impairments result in more than minimal limitations in functioning. *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996).

Here, the ALJ properly found that none of Plaintiff's physical impairments were severe impairments. With regard to Plaintiff's diabetes, the ALJ rightly noted that the record shows the only problem it caused was that it took his wounds took longer to heal. R. at 166, 194. Plaintiff's feet showed calluses, but no lesions or other wounds associated with severe diabetes. R. at 166, 509, 510, 514, 606. The record also shows his diabetes did not cause any other

3

physical limitations; he generally had a steady gait, normal strength and sensation, and no difficulties using his hands.  R. at 166, 456, 459, 526, 554, 562, 567, 592, 623, 630.

With respect to Plaintiff's GERD, although it required hospitalization at one point, it no longer does.  The evidence in the record shows it was not responsible for any functional limitation; it only caused problems with Plaintiff's continuous positive airway pressure ("CPAP") machine.  R. at 167.

Related to this, there is no evidence demonstrating that Plaintiff's sleep apnea was responsible for any limitations that would have had more than a minimal impact on his ability to perform work activities.  Although his sleep apnea required him to have oxygen treatment and his CPAP machine caused vomiting, which naturally resulted in him having a terrible time sleeping and being rated as "excessively sleepy" on the Epworth Sleepiness Scale, Plaintiff cannot show limitations in physical functioning of *work* activities.

Likewise, a ganglion cyst in Plaintiff's hand and bone spurs in his back were not severe impairments.  As noted above, Plaintiff generally had normal use of his hands.  R. at 30, 81, 167, 201-02, 526, 550, 554, 623, 630.  And medical examinations revealed he generally had a normal range of motion of the back and only mild to moderate levels of pain.  R. at 33, 167, 519, 553, 558, 562, 601, 605, 681.

Finally, Plaintiff's incontinence was not a severe impairment.  The evidence in the record shows he has experienced only a few episodes of incontinence and has no physical abnormalities.  R. at 38, 66, 167, 196, 444, 546, 561.  Consequently, Plaintiff has not met his burden of establishing that it had more than minimal impact on his ability to perform work activities.

4
Case 4:14-cv-01044-DGK   Document 21   Filed 02/26/16   Page 4 of 8

**B.     The ALJ did not err in analyzing Plaintiff's credibility.**

Plaintiff argues the ALJ's credibility analysis is flawed because the ALJ: (1) faulted him for his low earnings, even though he worked every year until he became disabled; (2) misinterpreted his desire to work as expressing an ability to work; (3) wrongly claimed he did not seek treatment for his sleep apnea; and (4) mischaracterized his activities of daily living as "generally normal."  Pl.'s Br. at 24-26.

Credibility questions are "primarily for the ALJ to decide, not the courts."  *Baldwin v. Barnhart*, 349 F.3d 549, 558 (8th Cir. 2003).  When the ALJ discounts a claimant's credibility, he must explain why he did so.  *Lowe v. Apfel*, 226 F.3d 969, 971 (8th Cir. 2000).  "If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, the Court should defer to the ALJ's credibility determination."  *Gregg v. Barnhart*, 354 F.3d 710, 713 (8th Cir. 2003).  Here, the ALJ gave good reasons for discrediting Plaintiff's credibility.  Although Plaintiff disagrees with the ALJ's reasoning, it is nonetheless supported by the evidence and controlling Eighth Circuit law.

To begin, the record shows the ALJ did not rely solely on Plaintiff's work history or his plans to work in evaluating his credibility.  Rather, she considered these factors as part of her overall credibility analysis.  It is well-established that, "Low earnings may signify a lack of motivation to work, and an ALJ can consider low earnings as a factor in the credibility analysis."  *Barker v. Astrue*, No. 4:10-0446-DGK-SSA, 2011 WL 3962497, at *5 (W.D. Mo. Sept. 8, 2011) (citing *Comstock v. Chater*, 91 F.3d 1143, 1147 (8th Cir. 1996)).  Similarly, the ALJ did not err in noting that Plaintiff told his caseworker that he wanted to work part-time after he completed house arrest. R. at 171, 577-78.  While Plaintiff's statement about wanting to work does not, by itself, establish his ability to work, it is relevant to the credibility of his allegations of total disability.

5

With respect to his lack of treatment for sleep apnea—which allegedly was his most severe physical impairment preventing him from working—the record shows Plaintiff's treatment appeared to be effective and that he did not require additional treatment. R. at 166, 171, 187, 525. Although Plaintiff cites one medical note indicating that he sought follow-up treatment in 2011 because his CPAP was not working, R. at 504, the fact that he sought treatment on one occasion does not change the fact that the record as a whole discredits his allegation of disabling sleep apnea. R. at 166, 171; *see Cochran v. Astrue*, No. 12-0139-SSA-CV-W-MJW, 2013 WL 550488, at *2 (W.D. Mo. Feb. 13, 2013) (affirming ALJ's credibility finding based, in part, on claimant's limited medical treatment) (citing *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006)).

Finally, Plaintiff argues that the ALJ erred in considering his ability to perform daily activities. Pl.'s Br. at 25-26. Plaintiff argues that the ALJ mischaracterized his ability to perform daily activities, and that the ability to perform such activities does not constitute substantial evidence supporting her decision. An ALJ must consider a claimant's ability to perform daily activities as part of the credibility analysis. *See* 20 C.F.R. §§ 404.1529 and 416.929; *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1994). Although the ability to perform daily activities alone may not constitute substantial evidence to support an ALJ's credibility decision, the ALJ considered several different factors in evaluating his credibility. R. at 166-71. Plaintiff reported being able to do laundry, vacuum, take out the trash, mow half the yard, drive, go shopping, go out alone, and spend time with others. R. at 199, 203, 410-12. The ALJ considered these activities in evaluating his credibility. R. at 167-68, 171. Thus, there is no error here. *See* 20 C.F.R. §§ 404.1529, 416.929; *Polaski*, 739 F.2d at 1322.

Because the ALJ gave good reasons for discounting Plaintiff's credibility, the Court must defer to her determination. *See Gregg*, 354 F.3d at 713.

6
Case 4:14-cv-01044-DGK   Document 21   Filed 02/26/16   Page 6 of 8

## C. Substantial evidence supports the RFC determination.

Finally, Plaintiff argues the ALJ should have included in her RFC determination at step four findings like those made at step three in evaluating his mental impairments that he has moderate difficulties with regard to concentration, persistence or pace. Pl.'s Br. at 17-19. Plaintiff contends the ALJ should have included these findings in the RFC formulation at step four and in the hypothetical posed to the vocational expert ("VE"). Pl.'s Br. at 19.

This argument rests on a misunderstanding of what "moderate" means as used at various points in the sequential evaluation process. The ALJ's finding that Plaintiff had "moderate" difficulty in maintaining concentration, persistence, or pace, was made at steps two and three in the context of determining whether his mental impairments met or equaled a medical listing. It was not intended to be used, and should not be used, as an RFC assessment. Social Security Ruling 96-8p makes this clear: "The adjudicator must remember that the limitations identified in the 'paragraph B' and 'paragraph C' criteria are *not an RFC assessment* but are used to rate the severity of mental impairment(s) at *steps 2 and 3* of the sequential evaluation process." SSR 96-8p (emphasis added). Simply put, "moderate" means different things in these different contexts. Thus, in formulating Plaintiff's RFC, the ALJ did not have to include a limitation finding he had "moderate" difficulty maintaining concentration, persistence, or pace, nor did the ALJ have to ask the VE about the effect of "moderate" difficulties in concentration, persistence, or pace would have on his employability. *See Martise v. Astrue*, 641 F.3d 909, 929 (8th Cir. 2011) (holding hypothetical questions to the VE need only account for impairments the ALJ finds are supported by the record).

**Conclusion**

For the reasons discussed above, the Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

Date:   February 26, 2016                           /s/ Greg Kays
                                                                GREG KAYS, CHIEF JUDGE
                                                                UNITED STATES DISTRICT COURT

8
Case 4:14-cv-01044-DGK   Document 21   Filed 02/26/16   Page 8 of 8